**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| ROOSEVELT WILLIAMS, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>SUPERINTENDENT, )<br>)<br>Respondent. ) | CAUSE NO. 2:17-CV-242-RL-JEM |

**OPINION AND ORDER**

This matter is before the Court on the Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus, filed by Roosevelt Williams, a *pro se* prisoner. For the reasons set forth below, the petition (ECF 1) is **DENIED**. The clerk is **DIRECTED** to close this case.

BACKGROUND

In the petition, Williams challenges the prison disciplinary hearing (MCF 16-04-287) where he was found guilty of possession and/or use of a controlled substance in violation of Indiana Department of Correction (IDOC) policy B-202 by the Disciplinary Hearing Officer (DHO). ECF 1 at 1. Williams was sanctioned with the loss of 90 days earned credit time and was demoted from Credit Class 1 to Credit Class 2. *Id.*

The Conduct Report charges:

On 4-14-2016 at 2:20pm I Sergeant T. Heishman was conducting range checks on the ½ side of PHU and observed Offender Williams Roosevelt 974618 PHU-220 sitting in the

-1-

top bunk leaning over his pillow in an unusual way that
looked suspicious. I had the cell door opened and advised
both offenders to step out of the cell because I thought
it smelled like hooch and I just wanted to do a quick
check. Both offenders complied and stepped out. I entered
the cell and I told Officer Hunt to stand by the door. As
I turned Offender Williams pillow on the top bunk over I
found a white powdery substance spread out over a red
folder. Immediately Offender Williams reentered the cell
and attempted to get between me and his bunk in an
aggressive way. I and Officer Hunt both took a defensive
stance and ordered Offender Williams out of the cell and
then restrained him and Offender Mims. Both Offenders
were then escorted to the center and searched without any
incidents. Upon questioning Offender Mims claimed the
substance to be his and the substance to be cocaine. The
paper work in the red folder was Offender Williams and
contained conduct reports and other personal card (sic)
with his name on them. Next to the red folder I located
a small bag inside a glove finger containing the white
substance believed to be cocaine[.] All items were
located on the top bunk that is assigned to Offender
Williams.

(ECF 1 at 24.) Officer Hunt also submitted a witness report:

On 4-14-2016 at 2:20pm I officer J. Hunt observed
Sergeant T. Heishman conducting a range check on the ½
side of PHU. I assisted Sgt. Heishman at conducted a cell
search of PHU 219/220. As Sgt. Heishman was searching the
top bunk, Offender Williams reentered the cell and
attempted to get between Sgt. Heishman and his bunk in an
aggressive way. I and Sgt. Heishman both took a defensive
stance and ordered Offender Williams out of the cell and
then restrained him and Offender Mims. Both Offenders
were then escorted to the center and searched without any
incidents. Sgt. Heishman questioned Offender Mims.
Offender Mims claimed the substance to be his and the
substance to be cocaine. All items were located on the
top bunk that is assigned to Offender Williams.

(ECF 1 at 26.) Both offenders were issued disciplinary reports.

DISCUSSION

When prisoners lose earned time credits in a prison
disciplinary hearing, they are entitled to certain protections

under the Due Process Clause: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in their defense when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). To satisfy due process, there must also be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In Ground One, Williams argues that the DHO did not have sufficient evidence to find him guilty because his cell-mate claimed ownership of the substance. In evaluating whether there is adequate evidence to support the findings of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. A conduct report alone can provide evidence sufficient to support the finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *Hill*, 472 U.S. at 457

-3-

(quotations marks and citation omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

Here, there was sufficient evidence to find Williams guilty of possession of a controlled substance. The Conduct Report specifically identified Williams as the offender who was "leaning over his pillow in an unusual way that looked suspicious." It was also Williams who aggressively attempted to reenter the cell once the officers discovered the substance on the pillow. Moreover, the substance was discovered in Williams' cell, inside a folder where Williams stored his personal property. This certainly amounts to "some evidence" that Williams was in possession of the substance.

Williams appears to believe that only one person can be in possession of contraband at a time. However, that is not the case under IDOC policy. The IDOC defines possession as follows:

> POSSESSION: On one's person, in one's quarters, in one's locker or under one's physical control. For the purposes of these procedures, offenders are presumed to be responsible for any property, prohibited property or contraband that is located on their person, within their cell or within areas of their housing, work, educational or vocational assignment that are under their control.

> Areas under an offender's control include, but are not limited to: the door track, window ledge, ventilation unit, plumbing and the offender's desk, cabinet/locker, shelving, storage area, bed and bedding materials in his/her housing assignment and the desk, cubicle, work station and locker in his/her work, educational or vocational assignment.

The Disciplinary Code for Adult Offenders. [http://www.in.gov/idoc/files/02-04-101 The Disciplinary Code for Adult_Offenders___6-1-2015.pdf](http://www.in.gov/idoc/files/02-04-101 The Disciplinary Code for Adult_Offenders___6-1-2015.pdf). Multiple offenders may have control over a space, and thus multiple offenders can be in possession of contraband. *See Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (where contraband was present in a cell occupied by four inmates, and there was a substantial likelihood that all inmates were aware of the contraband, there was sufficient evidence to support a disciplinary finding for possession). While Williams claims that Mims used his property without his permission, he does not contend that Mims used his property without his *knowledge*. It was not unreasonable for the DHO to infer that Williams was aware of the substance, given that the substance was in his cell and concealed within his property. Finally, Williams' contention that Mims owned the substance is irrelevant to the question of Williams' possession; pursuant to IDOC policy, an offender does not need to be the *owner* of the contraband in order to be guilty of possession. Therefore, Ground One does not identify a basis for habeas corpus relief.

In Ground Two, Williams argues that he was denied due process

because the DHO did not test the confiscated substance. However, Williams did not have a due process right to have the substance tested. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Though prisoners have a right to submit relevant exculpatory evidence, they do not have the right to create evidence which does not already exist because "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits." *Id. See also Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) ("Freitas was not entitled to a polygraph examination . . ."); *Rhatigan v. Ward*, 187 Fed. Appx. 889, 890-891 (10th Cir. 2006); and *Arthur v. Ayers*, 43 Fed. Appx. 56, 57 (9th Cir. 2002) (inmates not entitled to laboratory testing of substances). Moreover, there was no need to test the substance, as Mims admitted that the substance was his, and admitted that the substance was cocaine. Thus, Ground Two does not identify a basis for habeas corpus relief.

In Ground Three, Williams argues that he was denied his right to an impartial decision-maker. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and

substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate or presided over a prior disciplinary case. *Id.*

Here, Williams has not met the high standard necessary to establish bias. He argues that the DHO's "prosecutorial" questioning is evidence that he was not impartial. (ECF 1 at 11.) Williams claims that, after reading the Conduct Report at the hearing, the DHO asked Williams, "Now tell me how you're not guilty?" (ECF 1 at 11.) The DHO also told Williams that "all the evidence points toward you." *Id.* These statements are not sufficient to prove that the DHO was predisposed to find Williams guilty based on factors outside of the disciplinary record. Even Williams' claim that the DHO stated, "I feel that you're guilty because of the things you did to me in the past," does not meet the high standard of proof necessary to establish bias because it must be read in the context of the DHO's other statements. In the proper context, the DHO's statements demonstrate that the DHO was unmoved by Williams' defense, not that the DHO was biased. Thus, Ground Three does not identify a basis for habeas corpus relief.

In Ground Four, Williams argues that he was denied a copy of the DHO's written factual findings explaining why Mims' "exculpatory" statement was "rejected." While Williams had a right to a "written statement by the factfinders as to the evidence

relied on and the reasons for the disciplinary action," *Wolff*, 418 U.S. at 563, Williams did receive such a written statement in the Report of Disciplinary Hearing. Williams may have preferred a more detailed explanation of why the DHO was not persuaded to find in his favor based on Mims' claim of ownership, but his due process right was satisfied by the explanation he was given. Therefore, Ground Four does not serve as a basis for habeas corpus relief.

CONCLUSION

For the reasons set forth above, the petition (ECF 1) is **DENIED**. The clerk is **DIRECTED** to close this case.


**DATED: August 30, 2017**              /s/ RUDY LOZANO, Judge
                                        **United States District Court**